Scott Alan FRAZIER, Petitioner

v.

The PEOPLE of the State of
Colorado, Respondent.

No. 03SC445.

Supreme Court of Colorado,
En Banc.

May 17, 2004.

Rehearing Denied June 7, 2004.*

Earl S. Wylder, Denver, Colorado, Attorney for Petitioner.

Ken Salazar, General Attorney, Catherine P. Adkisson, First Assistant Attorney General, Appellate Division, Criminal Justice Section, Denver, Colorado, Attorneys for Respondent.

Justice KOURLIS delivered the Opinion of the Court.

## I. INTRODUCTION

In this case, we must resolve a conflict

* Justice MARTINEZ and Justice BENDER would    grant the Petition.

between Senate Bill 01–168,[1] which was in effect from July 1, 2001, to September 25, 2001, and section 18–1.3–401, 6 C.R.S. (2002), with respect to penalties for a vehicular homicide committed on August 12, 2001. The trial court sentenced the Petitioner, Scott Allen Frazier, to six years in the Department of Corrections for that offense pursuant to C.R.S. 18–1.3–401(1)(a)(V)(A). The court of appeals affirmed. *People v. Frazier,* 77 P.3d 838 (Colo.App.2003).

Senate Bill 01–168, which both parties agree was in effect at the time of the crime, was an Act focused on treatment for drunk drivers. It made reference to section 18–3–106(1)(b)(I), 6 C.R.S. (2001), which is the statute that sets out the elements of vehicular homicide, and prescribed a penalty of one year in the county jail.

We conclude that the references to the felony of vehicular homicide that appear in Senate Bill 01–168 create an ambiguity both when viewed within the statute as a whole and when viewed with reference to the provisions for felony offenses contained within Title 18 of the Colorado Revised Statutes. In construing legislation, our first goal is to apply the statute as the General Assembly intended. There is no question here that the General Assembly did not intend, by Senate Bill 01–168, to reduce the sentence for felony vehicular homicide from between four and twelve years in the Department of Corrections to one year in the county jail. Therefore, we affirm the court of appeals' decision, which in turn upheld the trial court's imposition of a six-year sentence.

## II. FACTS AND PROCEDURAL HISTORY

This case arises from a fatal motorcycle accident that occurred in the early morning hours of August 12, 2001. Prior to the accident, Frazier and the victim, Troy Christensen, consumed significant quantities of alcohol. Frazier then agreed to give Christensen a ride on his motorcycle. Only a few blocks from Christensen's home, Frazier lost control and struck a curb while traveling at a speed of approximately forty-five miles per hour. Both men were thrown from the motorcycle. Frazier, who was wearing a protective helmet, survived the accident but sustained serious injuries. Christensen, however, who was not wearing a helmet, died as a result of his injuries. Both Christensen and Frazier were twenty-five years old at the time of the accident.

On March 4, 2002, Frazier pled guilty to vehicular homicide pursuant to sections 18–3–106(1)(a) and (b), 6 C.R.S. (2001). Frazier signed a written Crim. P. 11 advisement form in which he indicated his understanding that the presumptive sentencing range for vehicular homicide was between four and twelve years. The trial court also verbally advised Frazier during the disposition hearing that the crime of vehicular homicide was a class three felony and that the potential sentence for class three felonies was a presumptive range of four to twelve years in the Department of Corrections. Frazier indicated to the trial court that he understood the legal consequences and potential punishment resulting from his guilty plea.

Before the sentencing hearing on June 25, 2002, Frazier filed a Motion for Sentencing. Frazier argued at that time through counsel that Senate Bill 01–168, which amended section 42–4–1301, 11 C.R.S. (2001), authorized a maximum sentence of one year in county jail for the crime of vehicular homicide. The trial court rejected Frazier's argument and sentenced him to six years in the custody of the Department of Corrections. The trial court relied in part on Senate Bill 01S2–008,[2] a subsequent amendment to section 42–4–1301, to conclude that a six-year sentence was appropriate.

The court of appeals affirmed the trial court's sentence in *Frazier,* 77 P.3d at 841. The court of appeals concluded that Senate

---

1. An Act Concerning the Requirement of the Completion of Level II Alcohol Treatment for Persistent Drunk Drivers, and Making an Appropriation Therefor, Ch. 229, sec. 8, § 42–4–1301, 2001 Colo. Sess. Laws 786, 789–93.

2. An Act Concerning Clarification of the Applicable Penalties for Offenses Involving the Operation of a Motor Vehicle by a Person who has Consumed Alcohol, Ch. 1, secs. 1 and 3, § 42–4–1301, 2001 Colo. Sess. Laws (2d Extraordinary Session), 1, 1–7.

Bill 01–168 conflicted with section 18–1.3–401(1)(a)(V)(A), the applicable sentencing statute for class three felonies.[3] *Id.* at 840. To resolve this conflict, the court of appeals examined legislative history, prior law, the goals of Colorado's sentencing scheme, and the consequences of the construction urged by Frazier in light of this conflict. *Id.* The court relied heavily on Senate Bill 01S2–008, which was enacted by the same General Assembly only a few months after Senate Bill 01–168. *Id.* The court noted that the language of Senate Bill 01S2–008 clearly indicates that Senate Bill 01–168 was never intended to modify the penalties for vehicular homicide. *Id.* Thus, the court perceived no error in the trial court's decision to sentence Frazier to six years in the custody of the Department of Corrections.[4] *Id.* at 841.

We granted certiorari to address "whether Senate Bill 01–168, which set the maximum penalty for vehicular homicide involving alcohol at one year in county jail, was clear and unambiguous, and therefore not subject to interpretive rules of statutory construction." We now affirm the judgment of the court of appeals upholding the trial court's sentence of six years.

### III. ANALYSIS

■ Senate Bill 01–168 is a statute designed to provide treatment alternatives for individuals convicted of offenses involving alcohol. It does not reclassify offenses. It does, however, make reference to the felony vehicular homicide statute. Frazier argues that, by that reference, the statute clearly and unambiguously sets the maximum sentence for vehicular homicide at one year in county jail. To the contrary, we conclude that the reference creates an ambiguity. Therefore, we rely on interpretive rules of statutory construction and conclude that the trial court was authorized to sentence Frazier to six years in the custody of the Depart-

ment of Corrections pursuant to section 18–1.3–401(1)(a)(V)(A).

### A. Background

Section 18–3–106 defines the substantive offense of vehicular homicide. It provides that "[i]f a person operates or drives a motor vehicle in a reckless manner, and such conduct is the proximate cause of the death of another, such person commits vehicular homicide." § 18–3–106(1)(a) ("reckless vehicular homicide"). In addition, section 18–3–106(1)(b)(I) ("DUI vehicular homicide") provides that "[i]f a person operates or drives a motor vehicle while under the influence of alcohol or one or more drugs ... and such conduct is the proximate cause of the death of another, such person commits vehicular homicide. This is a strict liability offense." Accordingly, a person may commit vehicular homicide either by driving in a reckless manner or by driving under the influence of alcohol or drugs.

In this case, Frazier pled guilty to committing both reckless and DUI vehicular homicide. However, these are not separate offenses but rather alternatives by which criminal liability for vehicular homicide may be charged and prosecuted. *People v. Lucero*, 985 P.2d 87, 93 (Colo.App.1999). Consequently, the trial court could only impose a sentence for one of the two alternatives. Section 18–3–106(1)(c) defines reckless vehicular homicide as a class four felony and DUI vehicular homicide as a class three felony. Because a conviction for DUI vehicular homicide mandates a harsher sentence, the trial court sentenced Frazier under that provision.

Section 18–1.3–401(1)(a)(V)(A) prescribes the sentence for felonies committed on or after July 1, 1993. The applicable sentence for a class three felony is a presumptive range of between four and twelve years. Thus, the trial court's sentence of six years

---

3. We note that the court of appeals on one occasion referred to section 18–1.3–401(1)(a)(IV)(A) in its opinion. *People v. Frazier*, 77 P.3d 838, 840 (Colo.App.2003). The applicable sentencing provision in this case was actually section 18–1.3–401(1)(a)(V)(A). This error did not affect the court of appeals' analysis.

4. The court of appeals also rejected Frazier's claims that its interpretation of the relevant statutes violated the constitutional prohibition against ex post facto legislation and guarantee of equal protection under the law. *Frazier,* 77 P.3d at 841. Those issues are not before us today and therefore we decline to address them.

was clearly within the authorized statutory range set forth in section 18–1.3–401(1)(a)(V)(A). Had section 18–1.3–401(1)(a)(V)(A) been the only statute to prescribe the penalty for vehicular homicide in effect when Frazier committed this crime, that would be the end of our inquiry.

However, during the 2001 legislative session, the General Assembly passed Senate Bill 01–168, titled "concerning the requirement of the completion of level II alcohol treatment for persistent drunk drivers, and making an appropriation therefor." Section 8 of the Act amended section 42–4–1301(9)(a)(II) to add the following language:

> An offender shall be punished by imprisonment in the county jail for not less than ninety days nor more than one year, and, in addition, the court may impose a fine of not less than five hundred dollars nor more than one thousand five hundred dollars upon a conviction of a violation of any of the following:

> \* \* \*

> (B) Section 18–3–106(1)(b)(I), C.R.S.[5]

Senate Bill 01–168 similarly amended sections 42–4–1301(a)(IV), (b)(II), and (b)(IV). *See* Colo. Sess. Laws 2001, ch. 229 at 790–792. Senate Bill 01–168 became effective on July 1, 2001, and was in effect on the date Frazier committed vehicular homicide.

In September of 2001, the General Assembly held an extraordinary session. During this session, Senate Bill 01S2–008 was passed. As pertinent here, that bill stated:

> SECTION 1. Legislative declaration. (1) The general assembly hereby finds, determines, and declares that:

> (a) An amendment to Colorado's drunk driving laws, enacted by Senate Bill 01–168, was intended as a conforming amendment only but may inadvertently have created ambiguity in the applicable penalties for the crimes of vehicular assault, vehicular homicide, and second and subsequent convictions for driving under the influence, driving while ability impaired, and driving with excessive alcoholic content;

> (b) The applicable penalties for such crimes were never intended to be, and never were, reduced as a result of any provision in Senate Bill 01–168, and the penalties set forth for such crimes in title 18, C.R.S., have at all relevant times continued to apply; and

> (c) This act is intended to remove any such ambiguity and to clarify the existing system of penalties for such offenses.

Senate Bill 01S2–008, effective September 25, 2001, also amended the relevant portions of section 42–4–1301, deleting all language referring to the penalties prescribed for vehicular homicide.

We are left, then, with a small period of time between the enactments of Senate Bills 01–168 and 01S2–008 where two wholly separate statutes prescribed different penalties for the crime of vehicular homicide. To resolve this conflict, we must apply interpretive rules of statutory construction so as to give effect to the General Assembly's intent.

### B. Statutory Analysis

Frazier maintains that Senate Bill 01–168 is clear and unambiguous because it states that the punishment for vehicular homicide "shall" be no more than one year in county jail. Therefore, Frazier asserts that the trial court erred in sentencing him under 18–1.3–401(1)(a)(V)(A) to six years of incarceration. We disagree.

To interpret a statute, this court begins with its plain language. *People v. Luther*, 58 P.3d 1013, 1015 (Colo.2002). If the statute is unambiguous and does not conflict with other statutory provisions, this court looks no further. *Id.* Here, Senate Bill 01–168 directly conflicts with the sentencing scheme articulated in Title 18 of the Colorado Revised Statutes. Senate Bill 01–168 mandates a maximum sentence of one year in county jail for vehicular homicide. Conversely, Title 18 mandates a minimum presumptive sentence to the Department of Corrections of four years. In light of this conflict, we must look beyond the plain language of the statutes to determine the legislature's intent.

---

5. This is the vehicular homicide statute to which Frazier pled guilty.

■ When statutory language conflicts with other provisions, we may rely on other factors such as legislative history, the consequences of a given construction and the goal of the statutory scheme to determine a statute's meaning. *People v. Cooper*, 27 P.3d 348, 354 (Colo.2001). We are also mindful of the rule of lenity that requires courts to resolve ambiguities in a penal code in favor of a defendant's liberty interests. *Faulkner v. Dist. Court*, 826 P.2d 1277, 1278 (Colo. 1992). However, application of the rule of lenity is a last resort and will not be applied when we are able to discern the intent of the General Assembly. *People v. Thoro Products Co.*, 70 P.3d 1188, 1198 (Colo.2003).

### i. Legislative History

■ In this case, the legislative intent, as reflected in the title of the Bill, was to impose additional treatment requirements upon persistent drunk drivers and allocate public resources for that purpose. Although the title of a statute is not dispositive of legislative intent, it is a useful aid in construing a statute. *Martinez v. Cont'l Enter.*, 730 P.2d 308, 313 (Colo.1986); *People v. Zapotocky*, 869 P.2d 1234, 1239 (Colo.1994) ("A court also may consider the title of the legislation in resolving uncertainties concerning legislative intent."). The General Assembly nowhere expressed its intention to reduce—by a factor of twelve—the penalties that an individual who committed vehicular homicide while under the influence of alcohol would suffer.

Some months later, in Senate Bill 01S2-008, the same General Assembly did explicitly state its intent as to the precise issue we here address. Although this subsequent expression of legislative intent cannot alone resolve the issue before us, it is instructive in our analysis of what that very General Assembly may have intended. *See People v. Holland*, 708 P.2d 119, 120–121 (Colo.1985) ("While subsequent legislative declarations concerning the intent of an earlier statute are not controlling, they are entitled to significant weight."). That later revision clarified that the General Assembly had no intention of modifying the sentence applicable to the crime of vehicular homicide.

Thus, we are not presented with a case where we must sift through boxes of documents and transcripts of legislative history to decipher the General Assembly's intent. Rather, it is unmistakably clear that the legislature never sought the outcome that Frazier advocates: namely, that felony vehicular homicide would become for all practical purposes a misdemeanor offense.

### ii. Consequences of a Particular Construction

■ When we examine the consequences of construing Senate Bill 01–168 as Frazier proposes, we find further support for our conclusion. A statutory interpretation leading to an illogical or absurd result will not be followed. *State v. Nieto*, 993 P.2d 493, 501 (Colo.2000). This rule of statutory construction supports our holding for two reasons.

First, Senate Bill 01–168 only makes reference to the statutory provision pertaining to DUI vehicular homicide. The statutory provision relating to reckless vehicular homicide remained unaltered. To construe Senate Bill 01–168 as mandating a one year county jail sentence for DUI vehicular homicide, while reckless vehicular homicide remained a class four felony subject to two to six years in the Department of Corrections, would require courts to recognize the presence of drugs or alcohol as a mitigating factor in vehicular homicide cases. Clearly, the legislature expressed no such intent; Title 18 has at all times treated DUI vehicular homicide as a more serious offense than reckless vehicular homicide.

Second, Frazier's interpretation would require us to conclude that the General Assembly intended for certain felony offenses to be punishable by one year or less in county jail. Traditionally, and by constitutional mandate, a sentence in county jail applies to misdemeanor offenses only. Colo. Const. art. XVII, § 4 ("The term felony, wherever it may occur in this constitution, or the laws of the state, shall be construed to mean any criminal offense punishable by death or imprisonment in the penitentiary, and none other."); *Brooks v. People*, 14 Colo. 413, 24 P. 553 (1890) ("[U]nder our constitution the test by which to determine whether an offense less

than capital shall be deemed a felony or a misdemeanor is made to depend upon whether the same is punishable by imprisonment in the penitentiary or in the county jail."); *Eckhardt v. People*, 126 Colo. 18, 247 P.2d 673, 677 (1952) (holding that if the penalty for a crime is imprisonment in the county jail, then the crime is a misdemeanor); *see also* LaFave, Substantive Criminal Law § 1.6(a) (2d ed.2003) (discussing the historical and practical distinction between felonies and misdemeanors).

Nowhere does Senate Bill 01–168 change the classification of vehicular homicide to a misdemeanor, or change the place of incarceration for a felony conviction from the penitentiary to the county jail.

For both of these reasons, we determine that Frazier's construction of Senate Bill 01–168 would lead to an illogical and unsupportable result.

### iii. Goal of Statutory Scheme

Finally, we examine the goals of the statutory scheme and conclude that Senate Bill 01–168 was not intended to alter the sentences for criminal offenses defined in Title 18. Section 42–4–1301, to which Senate Bill 01–168 pertains, appears within the vehicle and traffic regulation portion of the statutes. It deals with misdemeanors, driving under the influence, and driving while ability impaired offenses. Senate Bill 01–168 is titled "[c]oncerning the requirement of completion of level II alcohol treatment for persistent drunk drivers, and making an appropriation therefor." Conversely, Title 18 of the Colorado Revised Statutes addresses the substantive elements of criminal offenses and the corresponding penalties. Thus, as the People point out in their briefs to this court, the traffic code and the criminal code are directed at different societal harms. *See Daniels v. People*, 159 Colo. 190, 411 P.2d 316, 318–19 (1966) (indicating that traffic laws are enacted "for the purpose of regulating the movement of vehicular traffic on our streets and highways" whereas criminal laws evidence a legislative concern for the results that flow from violations of the traffic code).

Here, we conclude that the goal of Senate Bill 01–168 was not to decrease the penalty for alcohol related offenses but rather to increase those penalties. In light of this goal, we cannot interpret Senate Bill 01–168 in a manner that would achieve the opposite effect.

### IV. CONCLUSION

We conclude that Senate Bill 01–168 flatly and irreconcilably conflicts with other provisions of the Colorado Revised Statutes. In light of that conflict, we apply interpretive rules of statutory construction to determine the General Assembly's intent, and we hold that Senate Bill 01–168 did not require the trial court to sentence Frazier to one year in county jail. To the contrary, the trial court properly sentenced Frazier under Title 18 of the Colorado Revised Statutes. Therefore, we affirm the judgment of the court of appeals which upheld the trial court's imposition of a six-year sentence for the crime of vehicular homicide.

Justice BENDER dissents, and Justice MARTINEZ joins in the dissent.

Justice BENDER, dissenting:

There is no dispute in this case that SB 01–168 was in effect when Scott Alan Frazier pled guilty to violating section 18–3–106(1)(b)(I) ("DUI vehicular homicide"). Neither is there any dispute that SB 01–168 prescribes a penalty of "imprisonment in the county jail for not less than ninety days nor more than one year" for a defendant convicted of DUI vehicular homicide.

This penalty provision conflicts irreconcilably with Title 18's prescribed sentence for DUI vehicular homicide, between four and twelve years. *See* § 18–1.3–401(1)(a)(V)(A), 6 C.R.S. (2003). When two statutes conflict directly and irreconcilably, the General Assembly requires us to apply the statute enacted latest in time.

In this case, the "latest in time" rule requires us to apply SB 01–168 because it was the most recently enacted statute at the time the crime was committed. The majority, however, uses principles of statutory construction, which, in my view, are not applicable to the circumstances of this case, to con-

clude that the General Assembly did not intend to modify the presumptive sentence for DUI vehicular homicide when it enacted SB 01–168. While it may be true that the General Assembly did not intend to modify the sentence for DUI vehicular homicide when it enacted SB 01–168, the language of the statute leaves no room to doubt that this is precisely what the statute did.

To my mind, the majority overlooks the applicability of the "latest in time" rule and engages instead in an analysis that does not resolve the issue presented in this case. Accordingly, I respectfully dissent.

## Discussion

SB 01–168 was enacted on June 1, 2001, a little more than one month before the accident that led to the defendant's guilty plea in this case. The bill mandated that any offender convicted of violating section 18–3–106(1)(b)(I), which defines the crime of DUI vehicular homicide, "shall be punished by imprisonment in the county jail for not less than ninety days nor more than one year."

Before SB 01–168 was enacted, the sentencing statute prescribed a presumptive sentence range for a class three felony, such as DUI vehicular homicide, of between four and twelve years. § 18–1.3–401(1)(a)(V)(A), 6 C.R.S. (2003). Indeed, the sentencing scheme for conviction of a class three felony remained the same after SB 01–168 was enacted, which created a direct conflict between SB 01–168 and § 18–1.3–401(1)(a)(V)(A).

The majority concludes that because SB 01–168 contains references to the felony of DUI vehicular homicide, the bill creates "an ambiguity both when viewed within the statute as a whole and when viewed with reference to the provisions for felony offenses contained within Title 18 of the Colorado Revised Statutes." Maj. op. at 808. I agree that the reference in SB 01–168 to DUI vehicular homicide creates some confusion about the appropriate sentence for commission of that offense, but I do not agree that the confusion stems from any "ambiguity" in

the language of SB 01–168. There is nothing ambiguous about the directive of SB 01–168, which states that DUI vehicular homicide is to be punished as a misdemeanor offense.[1] The confusion caused by this provision stems solely from the fact that the sentence prescribed in SB 01–168 conflicts directly with that prescribed for the same crime in Title 18.

A court should attempt to reconcile statutes whenever possible to give effect to both, but when two statues conflict directly and irreconcilably, the General Assembly requires us to apply the statute that was enacted later in time. § 2–4–206, 1 C.R.S. (2003) ("If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date."); see also People v. Heitzman, 852 P.2d 443, 446 (Colo.1993); In re M.S. v. People, 812 P.2d 632, 637 (Colo.1991). In this case, SB 01–168 prescribes in clear and unambiguous language that the punishment for violation of section 18–3–205(1)(b)(I) is "imprisonment in the county jail for not less than ninety days nor more than one year." Because the plain language of this provision is so readily understandable, there is no need to resort to interpretive rules of statutory construction. Concerned Parents of Pueblo v. Gilmore, 47 P.3d 311, 313 (Colo. 2002). Instead, because this statute conflicts directly and irreconcilably with section 18–1.3–401(1)(a)(V)(A), which prescribes a different sentence for the same conduct, we must obey the directive of the General Assembly and apply the "latest in time" rule.

Adherence to the "latest in time" rule is also mandated in this case by constitutional notice requirements. To comport with due process, a statute must adequately inform a person of ordinary intelligence of the conduct it prohibits. See People v. Holmes, 959 P.2d 406, 414 (Colo.1998); see also § 18–1–102(a), 6 C.R.S. (2003) (requiring a court to construe a penal statute in a manner that gives "fair warning to all persons concerning the nature of the conduct prohibited and the penalties

---

1. The sentence provision in SB 01–168 provides in relevant part:

    (II) An offender shall be punished by imprisonment in the county jail for not less than

ninety days nor more than one year ... upon conviction of a violation of any of the following:

    (B) Section 18–3–106(1)(b)(I), C.R.S.

authorized upon conviction."). If a statute meets this requirement, every person is deemed to have constructive notice of the law and what it requires. *See Holmes,* 959 P.2d at 414; *People v. Rester,* 36 P.3d 98, 101 (Colo.App.2001).

In this case, the defendant had constructive notice of the conflicting penalty provisions in SB 01–168 and § 18–1.3–401(1)(a)(V)(A), and of section 2–4–206, which requires this court to resolve the conflict by applying the statute enacted latest in time. To apply any statute other than SB 01–168 to this case, then, violates both the statutory requirement that we apply the statute enacted latest in time and the notice requirement of the Due Process Clause.

In addition to the mandates of the General Assembly and the requirements of due process, other principles of criminal jurisprudence require us to rely on the "latest in time" rule. Criminal statutes are strictly construed in favor of an accused because of the liberty interest at stake in any criminal proceeding. *See, e.g., People v. Thoro Products Co., Inc.,* 70 P.3d 1188, 1198 (Colo.2003); *Bailey v. People,* 200 Colo. 549, 617 P.2d 549, 551 (1980). When a statute fails to give adequate notice of the conduct it prohibits or the punishment it prescribes, or when the language of a statute is ambiguous, this Court has consistently resolved such defects in favor of an accused. For example, we have held that the Ex Post Facto Clause of the Colorado Constitution prohibits a court from imposing a greater sentence than that authorized by statute. *See People v. Woodward,* 11 P.3d 1090, 1092 (Colo.2000) ("[A]ny statute which ... makes more burdensome the punishment for a crime ... after its commission, ... is prohibited as *ex post facto.*") (quoting *People v. Dist. Court (Thomas),* 834 P.2d 181, 195 (Colo.1992)). And we have applied the "rule of lenity" to resolve any ambiguity in the language of a statute in favor of an accused. *See Thoro Products,* 70 P.3d at 1198.

The rationale of these fundamental principles as well as the requirements of our statutes and due process is that the risks of any deficiency in a criminal statute are to be borne by its author, the state, rather than an accused. The majority fails to adhere to this rationale by overlooking the "latest in time" rule in this case. This failure is especially noticeable here, where the language of SB 01–168 is so readily understandable. Rules of statutory construction are meant to resolve ambiguity, not to create them.

In this case, SB 01–168 conflicted directly and irreconcilably with section 18–1.3–401(1)(a)(V)(A) at the time the underlying crime was committed. When faced with such a conflict, our precedent and our statutes require us to apply the statute enacted latest in time.

I am authorized to state that Justice MARTINEZ joins in this dissent.