2014 COA 93

**The PEOPLE of the State of Colorado, Plaintiff–Appellee,**

v.

**Eric Edward PIFER, Defendant–Appellant.**

**Court of Appeals No. 11CA2177**

Colorado Court of Appeals,
Div. V.

Announced July 31, 2014

John W. Suthers, Attorney General, Jacob R. Lofgren, Assistant Attorney General, Denver, Colorado, for Plaintiff-Appellee

Douglas K. Wilson, Colorado State Public Defender, Joseph P. Hough, Deputy State Public Defender, Denver, Colorado, for Defendant-Appellant

Opinion by JUDGE ASHBY

¶1 Defendant, Eric Edward Pifer, appeals the judgment of conviction entered on jury verdicts finding him guilty of one count of sexual assault on a child and three counts of enticement of a child. We conclude that the evidence was sufficient to support his convictions, the court acted within its discretion by denying a challenge for cause to a prospective juror, and the statute pursuant to which Pifer was sentenced was constitutional. Therefore, we affirm.

## I. Background

¶2 A.E., K.J., and M.S., all girls between the ages of nine and twelve years old, took Pifer's dog for a walk. When the girls returned the dog to Pifer, he asked if they wanted to come inside his apartment. The girls entered Pifer's apartment and started playing while he watched television. While they were playing, the girls knocked down a sheet that was hanging from the ceiling to separate the living room from the kitchen. Pifer then playfully chased the girls around the apartment with the sheet, tossing it over them and tickling them.

¶3 The girls alleged that, in the course of playing with them, Pifer individually and separately sexually assaulted each of them by touching their intimate parts over their clothing. Accordingly, the People charged Pifer with one count of sexual assault on a child and one count of enticement of a child for each of the three girls.

¶4 All three girls testified at trial. K.J. testified that Pifer touched her vaginal area over the sheet and her clothes. The jury found him guilty of sexually assaulting her. The jury found Pifer not guilty of sexually assaulting the other two girls, but found him

guilty of all three counts of enticement of a child. The court sentenced Pifer to a term of imprisonment of seven years to life in the custody of the Department of Corrections pursuant to the Sex Offender Lifetime Supervision Act (SOLSA).

¶ 5 Pifer appeals.

## II. Sufficiency of the Evidence

¶ 6 Whether the evidence was insufficient to sustain a conviction is a question we review de novo. *See People v. Williams,* 2012 COA 165, ¶ 34, 297 P.3d 1011. We view the evidence, both direct and circumstantial, in the light most favorable to the People to determine if it is substantial and sufficient to support the conviction beyond a reasonable doubt. *People v. Poe,* 2012 COA 166, ¶ 14, 316 P.3d 13.

¶ 7 We address whether the evidence was sufficient to sustain Pifer's sexual assault and enticement of a child convictions separately.

### A. Sexual Assault on a Child

¶ 8 A conviction for sexual assault on a child requires proof that an actor subjected a victim to unlawful sexual contact. § 18–3–404(1), C.R.S.2013. Sexual contact includes the "knowing touching of the clothing covering the immediate area of the victim's ... intimate parts." § 18–3–401(4), C.R.S.2013.

¶ 9 Pifer concedes that there was sufficient evidence to establish that he touched K.J. over her clothes and the sheet. Yet he argues that because the sheet was not part of K.J.'s clothing, and the sheet was between his hand and K.J.'s clothing, he did not touch the "clothing covering the immediate area" of K.J.'s intimate parts. Thus, according to Pifer, there was insufficient evidence of sexual contact and sexual assault.

¶ 10 When interpreting a statute, we aim to ascertain and give effect to the intent of the legislature based on the plain and ordinary meaning of the statutory language. *See People v. Scoggins,* 240 P.3d 331, 333 (Colo. App.2009). "We presume that the General Assembly intends a just and reasonable result when it enacts a statute, and we will not follow a statutory construction that defeats the legislative intent or leads to an unreason-

able or absurd result." *People v. Vinson,* 42 P.3d 86, 87 (Colo.App.2002).

■ ¶ 11 We conclude that Pifer's conduct falls within the plain and ordinary meaning of "touching." Webster's Third New International Dictionary defines "touch" as "to perceive or experience through the tactile senses." *Webster's Third New International Dictionary* 2415 (2002); *see People v. Voth,* 2013 CO 61, ¶ 23, 312 P.3d 144 ("In determining the plain and ordinary meaning of words, courts may look to the dictionary for assistance."). We have no doubt that an actor can perceive and experience the clothing covering a victim's vaginal area through the tactile sense despite the fact that there is a sheet between the actor's hand and the victim's clothing.

¶ 12 Furthermore, adopting Pifer's construction would mean that sexual contact could occur only by skin to skin contact, or when the actor's bare skin touches clothing that the victim is wearing. For instance, when, for the purpose of sexual arousal, abuse, or gratification, the actor wears a condom during a sexual act, touches the victim's bare genitals with a gloved hand, or touches the victim's bare genitals with a bare hand over a blanket, sexual contact would not occur under Pifer's construction. It strikes us as unlikely that the General Assembly intended to draw such distinctions in enacting the sexual assault statute. *Cf. Vinson,* 42 P.3d at 87 (ejaculating onto clothing covering a victim's intimate parts constitutes "touching" for purposes of establishing sexual contact; concluding otherwise would be contrary to legislative intent of sexual assault statute); *see also State v. Pearson,* 514 N.W.2d 452, 454–55 (Iowa 1994) (sexual contact, statutorily defined as "contact between the genitalia of one person and the genitalia or anus of another person," included contact where both the actor and the victim were fully clothed and the actor's penis touched the victim's anus through both individuals' clothing); *State v. Barnett,* 147 N.H. 334, 789 A.2d 629, 633 (2001) (sexual contact, statutorily defined as "the intentional touching of the victim's or actor's clothing covering the immediate area of the victim's or actor's sexual or intimate

parts," included touching the victim's genitalia through one or more blankets).

## B. Enticement of a Child

¶ 13 Enticement of a child occurs where the actor "invites or persuades" a child "to enter any . . . building . . . with the intent to commit sexual assault or unlawful sexual contact upon said child." § 18–3–305(1), C.R.S. 2013.

¶ 14 Pifer argues that the evidence was insufficient to establish that he (1) invited the three girls inside and (2) did so with intent to sexually assault them. We disagree with both arguments.

¶ 15 Pifer does not dispute that A.E.'s testimony was sufficient and substantial evidence establishing that he asked the girls if they wanted to come inside his apartment. Instead, he argues that this was not an invitation sufficient to support a conviction as there was no evidence that he enticed or persuaded the girls to enter the apartment.

¶ 16 The statute requires that there be an invitation or persuasion, not both. § 18–3–305(1). We fail to see how asking the three girls if they would like to come inside the apartment was not an invitation to do just that. *See People v. Baer,* 973 P.2d 1225, 1230 (Colo.1999) (appellate courts interpret statutory words and phrases according to their commonly accepted meanings).

¶ 17 We also conclude that there was sufficient and substantial evidence that Pifer intended to sexually assault the girls when he invited them inside. The People presented evidence that Pifer approached the girls outside of his apartment in his underwear with his penis partially visible, invited them into his apartment, and shortly after they came inside sexually assaulted K.J., touched M.S. in her groin area, and touched A.E. close to her breasts.

¶ 18 The jurors knew, because they asked during deliberations, that it was necessary to find that Pifer intended to sexually assault each girl at the time he invited them into the apartment to convict him of enticement. Although there were some discrepancies in the respective testimony of the three girls on some facts, giving the People "the benefit of

every reasonable inference which may be fairly drawn from the evidence," we conclude that the evidence is not such that a reasonable juror would "necessarily have a reasonable doubt" that Pifer intended to sexually assault the girls when he invited them inside. *Clark v. People,* 232 P.3d 1287, 1292 (Colo. 2010); *cf. People v. Black,* 759 P.2d 746, 747 (Colo.App.1988) (evidence that the defendant invited a child into his car, drove to a remote location, overpowered her, and attempted to sexually assault her was sufficient to establish that he invited her into his car with intent to sexually assault her). "It does not matter that, were we the trier of fact, we might have reached a different conclusion." *Clark,* 232 P.3d at 1291.

## III. Challenge for Cause

¶ 19 Next, Pifer contends that the court erred by denying his challenge for cause to a prospective juror. (Pifer's counsel used a peremptory challenge to excuse the prospective juror from service.) We review for an abuse of discretion, *see Carrillo v. People,* 974 P.2d 478, 485 (Colo.1999), and find none.

¶ 20 A court must sustain a challenge for cause if the juror has "a state of mind . . . evincing enmity or bias toward the defendant or the state," but not if "the court is satisfied . . . that [the juror] will render an impartial verdict according to the law and the evidence submitted to the jury at the trial." § 16–10–103(1)(j), C.R.S.2013; *accord* Crim. P. 24(b)(1)(X).

¶ 21 During voir dire, the prospective juror at issue did not indicate that he would be unable to consider the evidence and apply the law as directed by the trial court, nor did he say that he would be unable to be fair and impartial. Rather, he expressed concern that he would become impatient and frustrated during jury deliberations, which might compel him to try to reach a verdict quickly just to end deliberations.

¶ 22 Based on this expression of concern, Pifer's counsel challenged the prospective juror for cause. The court denied the challenge, ruling that potential frustration with the deliberation process was insufficient to

justify sustaining a challenge for cause. The court also noted that it would be willing to further instruct the prospective juror about how to handle the deliberation process if the need arose.

¶ 23 We conclude that the court acted within its discretion by denying the challenge for cause because the prospective juror gave no indication that he was biased against Pifer or would be unable or unwilling to render an impartial verdict according to the law and the evidence. *Cf. People v. Montgomery,* 743 P.2d 439, 441 (Colo.App.1987) (court acted within its discretion by denying challenge for cause to a juror who stated that he "would be worried about his business and would be distracted during the three-day trial, and might try to reach a verdict quickly" because the juror "gave no response which would indicate enmity or bias to either [party], nor a reluctance to base his decision on the law and the evidence").

## IV. SOLSA

¶ 24 Finally, Pifer argues that the SOLSA, pursuant to which he was sentenced, is unconstitutional. Pifer acknowledges that "numerous divisions of this [c]ourt have rejected the same or similar facial constitutional challenges to [SOLSA]." We follow the decisions of those divisions, and therefore reject Pifer's constitutional challenge. *See, e.g., People v. Lehmkuhl,* 117 P.3d 98, 108 (Colo.App.2004) (SOLSA does not violate procedural or substantive due process, equal protection, the separation of powers, the privilege against self-incrimination, or the constitutional prohibition of cruel and unusual punishment).

## V. Conclusion

¶ 25 The judgment and sentence are affirmed.

JUDGE HAWTHORNE and JUDGE J. JONES concur.